UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MATTHEW SZAPPAN,

                Plaintiff,                    Case No. 18-12244

v.                                      Honorable Thomas L. Ludington

TROY MEDER, et al.,

                Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS GARABELLI, SHIELDS, AND SAGINAW COUNTY'S MOTION TO
DISMISS AND/OR MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DISMISSING COUNTY OF SAGINAW AND MARK GARABELLI**

On February 10, 2016, Plaintiff, Matthew Szappan, was charged with three felony counts of maintaining a methamphetamine laboratory, possession by a felon of a firearm when ineligible to do so, and felony firearm based on a July 18, 2015 search executed on his property in Chesaning, Michigan. ECF No. 1; ECF No. 32-7 at PageID.1204. On July 18, 2015, a CPS officer and three police officers arrived at Plaintiff and Plaintiff's wife's property to conduct a wellness check. ECF No. 29-4 at PageID.751-755. During the welfare check, two police officers investigated the property and later obtained a search warrant for a full search of the property based in part on the investigation. *Id.* at PageID.754-762. Between the investigation and the subsequent search, Plaintiff's wife was detained on the property for an hour and a half. ECF No. 29-4 at PageID.789-790. Plaintiff was arrested, but released a day later pending further investigation. ECF No. 1 at PageID.8; ECF No. 29-3 at PageID.728-729.

Plaintiff was arrested again on May 11, 2016. He was arraigned on May 12, 2016, released on bond on June 16, 2016, and bound over to Saginaw County Circuit Court on November 3, 2016.

ECF No. 1 at PageID.8-9. On January 5, 2017, Plaintiff's attorney filed a motion to suppress evidence seized from the warrantless investigation of his property on July 18, 2015 that preceded the later search warrant. The motion was granted on June 21, 2017. *Id.* at PageID.9-10. The Saginaw County Prosecuting Attorney filed a *nolle prosequi* in July 2017. *Id.* Plaintiff initiated this action on July 17, 2018.

Plaintiff filed his complaint against Defendants Michigan State Police Trooper Troy Meder, Saginaw County Sergeant Mark Garabelli, Saginaw County Deputy Shields, and Saginaw County. ECF No. 1. Plaintiff alleged violations of his fourth amendment rights for an unlawful search, unlawful arrest, and malicious prosecution by Meder, Garabelli, and Shields. *Id.* Plaintiff also alleged violations of state law for invasion of privacy and intentional infliction of emotional distress against Meder, Garbelli, and Shields. *Id.* Lastly, Plaintiff alleged *Monell* liability against Saginaw County. *Id.* Defendant Meder filed a motion to dismiss and/or motion for summary judgment on October 12, 2018. ECF No. 6. The motion was granted in part for the unlawful arrest, malicious prosecution, invasion of privacy, and intentional infliction of emotional distress claims and denied with respect to the unlawful search and seizure claim. ECF No. 14. Accordingly, the only outstanding claim against Defendant Meder is the unlawful search and seizure claim.

On October 8, 2019, Defendants Garabelli, Shields, and Saginaw County filed a motion to dismiss and/or for partial summary judgment. ECF No. 29. Defendants Garabelli and Shields seek dismissal of the invasion of privacy and intentional infliction of emotional distress ("IIED") claims for failure to state a claim. They separately seek dismissal of the unlawful search, unlawful arrest, and malicious prosecution claims because they contend probable cause existed for the search, arrest, and prosecution. They also contend that they are entitled to qualified immunity, in any event. *Id.* Garabelli also seeks dismissal of the unlawful search claim because he did not participate

in the search. *Id.* Saginaw County seeks dismissal of the *Monell* claim because Plaintiff failed to show Defendant had an official policy or practice sufficient to prove liability. *Id.* Although Local Rule 7.1(e)(1)(B) requires "[a] response to a dispositive motion must be filed within 21 days after service of the motion," Plaintiff's response was filed over three weeks late without explanation. ECF No. 22. Defendants filed a timely reply. ECF No. 33. As explained below, Defendants Garabelli, Shields, and Saginaw County's Motion will be granted in part and denied in part.

## I.

The allegations in a plaintiff's complaint are to be presumed true in addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] and are as follows. On or about July 18, 2015, personnel from the Michigan Department of Health and Human Services, Child Protective Services ("CPS"), "received information[2] regarding possible drug use or manufacture at Plaintiff's residence located at 13100 S. Graham Road in Chesaning, Michigan." Compl. ¶ 8. Acting upon the information, CPS personnel decided to check on the welfare of Plaintiff's children at Plaintiff's residence. *Id.* ¶ 9. CPS personnel contacted the Saginaw County Sheriff Department and requested that personnel from the Saginaw County Sheriff Department accompany the CPS personnel to the residence while they performed their welfare check. *Id.* ¶ 10. In response to this request, at approximately 1:30 PM, Sergeant Garabelli and Deputy Shields were dispatched to the residence to assist the CPS workers to perform their welfare check. *Id.* ¶ 11.

Michigan State Police Trooper Meder overheard the dispatch, contacted Sergeant Garabelli, offered his assistance, and then proceeded to the residence to assist Sergeant Garabelli and Deputy Shields. *Id.* ¶ 12. Trooper Meder met with the CPS worker north of the residence. *Id.* ¶ 13. Shortly thereafter, Sergeant Garabelli and Deputy Shields arrived and met with Trooper

---

[1] *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).
[2] The parties have not provided any explanation concerning the nature or source of this information.

Meder and the CPS worker. *Id.* ¶ 14. Trooper Meder briefed Sergeant Garabelli and Deputy Shields regarding what he had learned from the CPS worker and the foursome proceeded to the residence located just south of where they had met. *Id.* ¶ 15.

Upon arriving at the residence, the foursome discovered the home surrounded by a fence with an unlocked gate across the driveway. *Id.* ¶ 16. They parked on the road and yelled at the house until Plaintiff's wife came out to meet with them. *Id.* A short time later, Plaintiff's wife exited the residence and met the foursome by the driveway gate. *Id.* ¶ 17. The CPS worker explained the purpose of their presence at the property, and Plaintiff's wife opened the gate and allowed them entry onto the property. *Id.* ¶ 19. Trooper Meder observed a barn on the rear part of the property behind the residence. *Id.* ¶ 20. The barn door was open and lights were on inside. *Id.* Without obtaining consent, Trooper Meder and Deputy Shields proceeded to the barn seeking to locate Plaintiff. *Id.* ¶ 21.

Trooper Meder and Deputy Shields began their search for Plaintiff without looking for Plaintiff's children. *Id.* ¶ 22. When Trooper Meder and Deputy Shields entered the backyard of the residence, Trooper Meder observed marijuana plants. *Id.* ¶ 23. Trooper Meder and Deputy Shields proceeded to the barn and entered a workshop on the south side of the barn. *Id.* ¶ 24. During the search of the barn, Trooper Meder discovered a one-pound container of table salt located on a table near a work bench. *Id.* ¶ 29. Trooper Meder further discovered a one-gallon container of acetone on a table, a one-gallon container of Coleman camp fuel, a one-quart size container of Coleman camp fuel, and a container of Lye. *Id.* ¶ 30. Although Trooper Meder did not observe any methamphetamine being manufactured, he nonetheless concluded that these items could be used to manufacture methamphetamine, and at least two of the items had no logical use in a workshop with no plumbing. *Id.* ¶ 31. Only after they conducted their search of the barn did Trooper Meder

and Deputy Shields proceed back to the residence where they met the CPS worker and Sergeant Garabelli who was speaking with Plaintiff and his wife. *Id.* ¶ 32.

Trooper Meder then contacted a Saginaw County Assistant Prosecuting Attorney who advised Trooper Meder that the evidence he discovered during his warrantless search of the barn could be used in support of a search warrant to search the remainder of the property. *Id.* ¶ 33. The Saginaw County Assistant Prosecuting Attorney agreed to meet with Trooper Meder and to draft an Affidavit and Search Warrant for the premises. *Id.* ¶ 34.

Trooper Meder and Sergeant Garabelli decided that Plaintiff and his wife should leave the premises pending the execution of the Search Warrant. *Id.* ¶ 35. Sergeant Garabelli and Deputy Shields then began escorting Plaintiff and his wife to a parked car in the driveway. *Id.* ¶ 36. Trooper Meder instructed Sergeant Garabelli and Deputy Shields to conduct a search of the vehicle before allowing Plaintiff and his wife to remove it from the premises. *Id.* ¶ 37. Plaintiff disclosed that his wife's shotgun was present in the vehicle. *Id.* ¶ 38. Trooper Meder then searched the vehicle and seized the shotgun. *Id.* ¶ 39.

Saginaw County District Court Judge Terry Clark issued a search warrant the same day. *Id.* ¶ 43. BAYANET and the Third District Methamphetamine Response Team then searched Plaintiff's property, including the home, the curtilage, and all vehicles and outbuildings. *Id.* ¶ 44. Nine suspected marijuana plants and a 12-gauge Mossberg pump shotgun were seized. *Id.* ¶ 46. Plaintiff was arrested[3] but released two days later pending investigation. *Id.* ¶ 47; ECF No. 29-3 at PageID.728. On February 10, 2016, Plaintiff was charged with three felony counts. ECF No. 1 at ¶ 48. He was arrested on May 11, 2016. *Id.* ¶ 49. The Saginaw County Circuit Court granted Mr. Szappan's motion to suppress and "ordered that the evidence obtained by Defendants as well as

---

[3] The parties do not explain the basis for Plaintiff's arrest on July 18, 2015.

the poisonous fruits of that evidence be suppressed." *Id.* ¶ 55. The Saginaw County Prosecuting Attorney filed a Motion for an Order of Nolle Prosequi due to "lack of evidence," which the court entered. *Id.* ¶ 56-57.

## II.

Defendants frame their arguments as, alternatively, a motion to dismiss or a motion for summary judgment. Notably the significant difference is the standard of review. Defendants contend that Plaintiff fails to state a claim for the invasion of privacy and intentional infliction of emotional distress claims. ECF No. 29 at PageID.701-705. Accordingly, the argument will be analyzed applying the Rule 12(b)(6) legal standard.

Second, Defendants advance additional arguments seeking summary judgment with respect to other claims. They argue the unlawful search claim against Defendant Garabelli should be dismissed due to lack of evidence. ECF No. 29 at PageID.692-693. Defendants also argue Plaintiff's unlawful arrest and malicious prosecution claims fail because there was probable cause for the arrest and prosecution or alternatively because the officers have qualified immunity. *Id.* at PageID.693-701. Defendant Shields argues the unlawful search and seizure claim against him should be dismissed because he is entitled to qualified immunity. *Id.* at PageID.695-697. Finally, Defendants assert that Plaintiff's *Monell* claim against Saginaw County should be dismissed because he failed to identify any official policy or practice. *Id.* at PageID.697-701. The arguments on the unlawful search, unlawful arrest, malicious prosecution, and *Monell* claims will be addressed applying the Rule 56 standard of review.

## III.

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678– 79 (quotations and citation omitted).

## A.

Michigan recognizes four distinct types of privacy torts: 1) intrusion upon seclusion, 2) public disclosure of embarrassing private facts, 3) publicly painting the plaintiff in a false light, and 4) appropriation of the plaintiff's likeness. *Doe v. Mills*, 536 N.W.2d 824, 828 (1995).

Plaintiff claims "Defendants invaded [his] privacy by obtaining information about the matter by a method that would be objectionable to a reasonable person." ECF No. 1 at PageID.14. As such, Defendants read Plaintiff's complaint to be an intrusion upon seclusion claim. The three elements to an intrusion upon seclusion claim are: "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Doe v. Mills*, 536 N.W.2d 824, 832 (Mich. Ct. App. 1995) (citing *Tobin v. Michigan Civil Service Commission*, 331 N.W.2d 184, 189 (Mich. 1982)).

Plaintiff's complaint summarily recites the elements of an intrusion upon seclusion claim. ECF No. 1 at PageID.14. It does not factually identify the matter that was private, nor explain his

right to maintain the information private, nor explain how the invasion of privacy would be objectionable to a reasonable person. Plaintiff attempts to address the deficiency in his response by stating he "had a reasonable expectation of privacy in the barn within the curtilage of his home." ECF No. 32 at PageID.1074. However, Plaintiff has not sought to amend his complaint. Further, the sole focus of a motion to dismiss are the facts alleged by Plaintiff in his complaint. While the federal pleading standard does not require detailed factual analysis, Plaintiff cannot survive a motion to dismiss where a complaint simply provides factual allegations unconnected to the elements of the claim. A simple recitation of the elements of a claim is insufficient to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's complaint fails to state a claim for the privacy claim of seclusion, and accordingly, the claim will be dismissed.

**B.**

There are four elements to a prima facie case for intentional infliction of emotional distress ("IIED") under Michigan law: "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Lucas v. Awaad,* 830 N.W.2d 141, 150 (Mich. Ct. App. 2013). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lucas*, 830 N.W.2d at 150 (quoting *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995)). Evidence of "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" is insufficient to establish IIED liability. *Doe*, 536 N.W.2d at 833.

Plaintiff does not identify the actionable conduct at issue in his complaint, but once again simply recites the elements of a Michigan IIED claim. ECF No. 1 at PageID.15. Defendants presume the conduct at issue is "their alleged unlawful search and seizure of Plaintiff's barn and Plaintiff's alleged unlawful arrest" (ECF No. 29 at PageID.703) and Plaintiff does not object to this characterization in his response. Defendants argue that Plaintiff did not seek medical or psychological treatment after the incident and that Plaintiff had multiple outstanding warrants at the time of his arrest in May 2016. *Id.* at PageID.703-704. Defendants also explain that Defendants Shields and Garabelli did not handcuff or arrest Plaintiff on July 18, 2015. Plaintiff only responds to one of Defendants arguments – that all tortfeasors are liable for another tortfeasors conduct as long as they "'counseled, instigated, aided, and abetted' the misconduct." ECF No. 32 at PageID.1076 (quoting *Brink v. Purnell*, 127 N.W. 322, 323 (Mich. 1910). Just as Plaintiff's additional information included in his response to the motion challenging his privacy claim cannot be considered, neither can the factual developments Defendants include in their motion to dismiss be considered.

Despite Plaintiff's insistence that all Defendants are jointly liable for the torts of their co-tortfeasors, Plaintiff's complaint provides no explanation for what conduct Plaintiff alleges to be extreme and outrageous. Even assuming Plaintiff is referring to his arrest, prosecution, and the search and seizure of his property, Plaintiff fails to allege conduct that is "atrocious and utterly intolerable in a civilized community." *Lucas*, 830 N.W.2d at 150 (quoting *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995)). Plaintiff is correct that the federal rules only require "a short and plain statement of the grounds for the court's jurisdiction." FED. R. CIV. P. 8. However, Plaintiff has done nothing more than enumerate the elements for an IIED claim. The Supreme Court has held that "labels and conclusions[] and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim for IIED will be dismissed.

## IV.

Turning next to the motion for summary judgment arguments, a motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## A.

### i.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). An arrest "based on a facially valid warrant approved by a magistrate provides a complete defense." *Id.* If the arrest is based on a facially valid warrant, a plaintiff must prove "by a preponderance of the evidence that in order to procure the warrant, [defendant] 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'that

such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 786–87 (3rd Cir. 2000)). Probable cause for the arrest "is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, or committing, or is about to commit an offense.'" *Fridley*, 291 F.3d at 872 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

The "tort of malicious prosecution," the Sixth Circuit instructs, is "a separate constitutionally cognizable claim . . . under the Fourth Amendment," which "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010) (quotation marks and emphasis omitted) (quoting *Wallace v. Kato,* 549 U.S. 384, 390 (2007); *Barnes v. Wright,* 449 F.3d 709, 715–16 (6th Cir. 2006). There are four elements to a malicious prosecution claim: 1) criminal prosecution was initiated against Plaintiff and Defendants "made, influenced, or participated in the decision to prosecute," 2) "lack of probable cause for the criminal prosecution," 3) Plaintiff suffered a deprivation of liberty, separate from the initial seizure, and 4) the criminal proceeding resolved in Plaintiffs' favor. *Sykes*, 625 F.3d at 308–09.

### ii.

Defendants assert probable cause defenses to both the false arrest and malicious prosecution claims. They claim "neither Defendant Garabelli nor Defendant Shields handcuffed or arrested Plaintiff on July 18, 2015." ECF No. 29 at PageID.694. "A police officer determines the existence of probable cause [for an arrest] by examining the facts and circumstances within his

knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'" *Fridley*, 291 F.3d at 872 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Probable cause is determined by considering the "totality of the circumstances." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). "In ascertaining whether a constitutional violation occurred, the only question is whether [the police officer] had probable cause—not whether the evidence would be sufficient to support a conviction." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). Further, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams,* 407 U.S. 143, 149 (1972).

"An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). The Sixth Circuit continued and said,

> A facially valid warrant is not always sufficient to merit summary judgment in an action brought pursuant to § 1983 when evidence exists that a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest or a search warrant provided that the misleading or omitted information is critical to the finding of probable cause. In this case, however, Plaintiff never alleges, much less offers evidence, that any of Defendants intentionally misled the magistrate or that they omitted material information at the probable cause hearing. *Id.* n. 4 (citations omitted).

Probable cause for a malicious prosecution claim is different than the probable cause for a false arrest claim. A plaintiff claiming false arrest must prove there was no probable cause to arrest the plaintiff. *Id.* at 305. A plaintiff raising a claim of malicious prosecution under federal law must demonstrate a lack of probable cause for the prosecution. *See id.* at 308; *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004). Where a plaintiff had a prior opportunity to litigate the existence of probable cause—*e.g.*, through a preliminary hearing—a judicial determination that probable cause exists has preclusive effect unless there is evidence that the officer supplied false

information to establish probable cause. *See Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007); *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002).

### iii.

It is unclear from Plaintiff's complaint if his claim for unlawful arrest is based upon Trooper Meder's arrest of him on July 18, 2015 or his later arrest, subject to an arrest warrant, on May 11, 2016. However, a footnote in Plaintiff's response indicates that he "does not claim that there was no probable cause to arrest him on May 11, 2016." ECF No. 32 at PageID.1067 n.5. Accordingly, the focus will be on the question of whether Defendants had probable cause to arrest Plaintiff on July 18, 2015, the day of the search and seizure at Plaintiff's property.

First, Defendants emphasize that Plaintiff admits that neither Defendant Garabelli or Defendant Shields handcuffed him on July 18, 2015. Instead, Plaintiff claims that they engaged in "misconduct . . . by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct" by Trooper Meder. ECF No. 32 at PageID.1067. Defendants presence at the scene alone, with no further information regarding their involvement in Plaintiff's arrest, does not subject them to a false arrest claim.

Even if Defendants' presence at Plaintiff's property was sufficient to create liability for Meder's handcuffing of Plaintiff, based on a totality of the factual circumstances, there was probable cause to arrest Plaintiff on July 18, 2015.

During the initial visit to Plaintiff's property, Defendants saw marijuana plants being illegally grown in the backyard in plain sight. Plaintiff testified at his deposition that he had a medical marijuana card around that point in time and his wife testified she never had a medical marijuana card. *See* ECF No. 32-9 at PageID.1235; ECF No. 32-8 at PageID.1214. The Michigan Medical Marijuana Act allows medical marijuana patients to grow up to 12 marijuana plants, but

the plants must be "kept in an enclosed, locked facility." MCL § 333.26424. Marijuana can be grown outdoors in an enclosed, locked facility if the plants "are grown within a stationary structure that is enclosed on all sides, except for the base, by chain-link fencing, wooden slats, or a similar material that prevents access by the general public and that is anchored, attached, or affixed to the ground." MCL § 333.26423. The police officers testified, however, that the marijuana plants were in a garden near the house and visible to the naked eye while they were on the property. ECF Nos. 32-4 at PageID.1105-1107; 32-5 at PageID.1128-1131; 32-6 at PageID.1169. A medical marijuana patient forfeits their right to immunity under the Michigan Medical Marijuana Act if they do not comply with all elements of the law, including storing plants in an "enclosed, locked facility." *See People v. Hartwick*, 870 N.W.2d 37, 42 (Mich. 2015). Because the marijuana plants were not in an enclosed, locked facility, probable cause existed for Plaintiff's arrest on July 18, 2015. Therefore, even if Defendants Shields and Garabelli were engaging in "misconduct . . . by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct" by Defendant Meder as Plaintiff claims, ECF No. 32 at PageID.1067, there was probable cause to arrest Plaintiff. Defendants Garabelli and Shields' motion for summary judgment on the false arrest claim will be granted.

Probable cause for determination of a malicious prosecution claim differs from the analysis for an unlawful arrest claim. Plaintiff was charged with maintaining a laboratory involving methamphetamine, possession by a felon of a firearm when ineligible to do so, and felony firearm in Saginaw County Circuit Court. ECF No. 32-7 at PageID.1204. A probable cause hearing was conducted by District Court Judge Randall Jurrens. *See* ECF No. 32-7 at PageID.1193. Therefore, Plaintiff must show evidence that a law enforcement officer provided false information at the probable cause hearing to succeed on a malicious prosecution claim. *See Peet v. City of Detroit*,

502 F.3d 557, 566 (6th Cir. 2007). However, Plaintiff does not provide any evidence of false information by police officers at the probable cause hearing in his response. Plaintiff argues Defendants "have failed to cite any case law that the presence of three common household items [table salt, lye, Coleman camp fuel] found in an area where they would typically be found is sufficient to constitute probable [cause] to search a residence." ECF No. 32 at PageID.1068. However, that is not the relevant standard. Plaintiff must identify an issue of genuine fact regarding a law enforcement officer's false testimony at a probable cause hearing to prevail on a motion for summary judgment. He has not done so. Therefore, Defendants Garabelli and Shields motion for summary judgment on the malicious prosecution claim will be granted.

## B.

### i.

The fourth amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Supreme Court has held that searches by law enforcement require a warrant, unless the search "falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 381-82 (2014).

### ii.

Defendant Garabelli and Defendant Shields offer different defenses to the unlawful search claim. Defendant Garabelli argues there is insufficient evidence that he participated in the unlawful search. Alternatively he contends he is entitled to qualified immunity. ECF No. 29 at PageID.692-693, 695-697. Defendant Shields contends that he is entitled to qualified immunity. *Id.* at

PageID.695-697. Plaintiff argues in his response that his wife did not consent to the law enforcement officers entering their property, that Defendant Garabelli was essentially a lookout to make sure Plaintiff was occupied while Defendants Meder and Shields went into the barn to conduct a search, and that Garabelli was simply present to ensure the safety of Meder and Shields. ECF No. 32. However, Defendant Garabelli's police report indicates that he "stood by with the CPS worker as she interviewed the family" and was not in the barn with Defendants Meder and Shields. ECF No. 29-2 at PageID.710. Plaintiff acknowledged in his deposition that Garabelli stayed with Ms. Karbowski and Plaintiff throughout the time Ms. Karbowski was speaking with Plaintiff or Plaintiff's wife. ECF No. 29-3 at PageID.724-725. Plaintiff also testified that he did not see Garabelli go into the barn until after the search warrant was issued. ECF No. 29-3 at PageID.727. Plaintiff's wife also testified that Defendant Garabelli stayed with the CPS worker, Plaintiff, and herself during the time at which Meder and Shields were in the barn. ECF No. 32-8 at PageID.1213-1214.

Plaintiff does not challenge the justification for the CPS complaint nor the legal authority for the CPS wellness check. Additionally, Plaintiff does not identify any evidence of Garabelli conspiring with the other police officers to complete an unlawful search and seizure with Garabelli's role being to distract Plaintiff. Plaintiff has not demonstrated that there are genuine issues of fact that must be decided regarding Garabelli's participation in the alleged illegal search and seizure. Therefore, Defendant Garabelli's motion for summary judgment on the unlawful search and seizure claim will be granted.

### iii.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). The doctrine protects government officials "from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The existence of qualified immunity depends on whether a defendant's action violated clearly established law. *Id.* at 243–44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Court has discretion regarding the sequence with which to conduct the analysis. *Pearson*, 555 U.S. at 236. Thus, the Court may hold that a right is not clearly established law without first analyzing whether the relevant facts actually establish a constitutional violation. *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

**iv.**

Defendant Shields contends that he is entitled to qualified immunity for Plaintiff's unlawful search and seizure claim. Qualified immunity only shield officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). There is a two-part inquiry—is the right clearly established and if so, did defendant violate that right. Plaintiff asserts the constitutional right at issue is his fourth amendment right to be free from a warrantless search of his home and property. ECF No. 32 at PageID.1070-1071. The right to be free from warrantless searches and seizures without an applicable exception is a well-established constitutional right. *See* U.S. CONSTIT. amend. IV; *Riley v California*, 573 U.S. 373, 381-82 (2014).

Because the right to be free from warrantless searches of one's home is a well-established constitutional right, in order to prevail on his motion for summary judgment, Defendant Shields must prove that his actions did not constitute a constitutional violation. Defendant argues that the search warrant, Plaintiff's arrest, and Plaintiff's prosecution were all supported by probable cause and that "Plaintiff has failed to identify a violation of his constitutional rights independent from the initial search of the barn." ECF No. 29 at PageID.697. Defendant correctly contends that there was probable cause for the arrest and prosecution (and his motion for summary judgment on those claims will be granted). However, the evidence supporting the search warrant was suppressed by the Circuit Court Judge because the evidence utilized to obtain the search warrant was obtained by violating Plaintiff's constitutional rights. ECF No. 1 at PageID.9. Defendant has not offered evidence or any explanation for why his search of the barn prior to the search warrant was not a constitutional violation. Plaintiff has provided sufficient evidence to believe that Defendant

Shields is not entitled to qualified immunity for the illegal search and seizure claim. That is, Defendant Shields has not proven there is no question of genuine fact as to whether he conducted an illegal search and seizure on Plaintiff's property. Defendant Shields motion for summary judgment on the illegal search and seizure claim on the basis of qualified immunity will be denied.

### D.

To find a municipality liable under a Section 1983 claim, it must be examined applying a two pronged inquiry. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). First, it must be determined whether the plaintiff has asserted the deprivation of a constitutional right. *Id.* at 120–21. The second inquiry is whether the municipality is responsible for the violation. *Id.* For liability to attach, both requirements must be met. *Id.*

A plaintiff may not recover against a municipality on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a plaintiff must prove that municipality officials maintained a policy or custom that violated the plaintiff's constitutional rights. *Id.* at 690–691. The custom does not have to be approved through official channels. *Id.* at 691. Rather, it should be considered a legal institution that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Monell*, 436 U.S. at 691). However, the fact a custom existed is not itself enough to demonstrate municipal liability. The plaintiff must also demonstrate that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted). "It must reflect a course of action deliberately chosen from among various alternatives." *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996).

The Sixth Circuit has identified four ways in which a plaintiff may demonstrate that a municipality's custom or usage is illegal. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). They are: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.*

To succeed on a claim of inaction under the fourth category, the plaintiff must show deliberate indifference on the part of the defendant. *Doe*, 103 F.3d at 508 (6th Cir. 1996). It must amount to more than a collection of "sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference." *Id.* The plaintiff must demonstrate that the municipality had a pattern of inadequately investigating similar claims. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Board of Cty. Comm'rs*, 520 U.S. at 406.

*Monell* sets a high bar for plaintiffs wishing to bring a Section 1983 claim against a municipality and it will rarely survive a summary judgment motion. *Hanson v. Madison Cty. Det. Ctr.*, 736 Fed. Appx. 521, 541–42 (6th Cir. 2018). The municipality must be engaging in a custom that harms plaintiff's rights and do so in a deliberate fashion.

For purposes of surviving summary judgment, Plaintiff has fulfilled the first requirement by claiming that Saginaw County violated his rights under the Fourth Amendment. ECF No. 1. This leaves the second requirement.

In his response, Plaintiff seems to argue that Saginaw County's custom at issue is its custom of tolerating or acquiescing to federal right violations. ECF No. 32 at PageID.1072-1073 ("where the need to take some action to control the agents of the government 'is so obvious, and

the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989))).

Plaintiff summarizes the facts of the case and then simply concludes that "[t]he policymaker's toleration of Defendants Meder and Shields' behavior establishes a policy-in-practice just as readily attributable to the municipality as a one-act policy-in-practice." ECF No. 32 at PageID.1073. Defendant Meder is a Michigan State police trooper, not a Saginaw County employee and therefore, his behavior cannot subject Saginaw County to liability. This leaves Defendant Shields' conduct as the only party acting for Saginaw County. Plaintiff has not identified any evidence of indifference on the part of Saginaw County in relation to Defendant Shields' conduct. Plaintiff has not explained if Shields was disciplined nor if he was encouraged to participate in additional training on constitutional rights regarding warrantless searches. Plaintiff also provides no evidence of similar occurrences by other Saginaw County police officers. In summary, there are no genuine issues of material fact regarding Saginaw County's policies. Defendant Saginaw County's motion for summary judgment on the *Monell* claim will be granted.

## V.

Accordingly, it is hereby **ORDERED** that Defendants' motion to dismiss and/or for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Defendants Garabelli and Shields motion to dismiss as to Count V, the invasion of privacy claim, is **GRANTED**. Defendants Garabelli and Shields motion to dismiss as to Count VI, the intentional infliction of emotional distress claim, is **GRANTED**. Defendants Garabelli and Shields' motion for summary judgment on Count II, the unlawful arrest claim, is **GRANTED**. Defendants Garabelli and Shields motion for summary judgment as to Count III, the malicious prosecution claim, is **GRANTED**.

Defendant Garabelli's motion for summary judgment as to Count I, the unlawful search and seizure claim, is **GRANTED**. Defendant Shields' motion for summary judgment as to Count I, the unlawful search and seizure claim, is **DENIED**. Defendant Saginaw County's motion for summary judgment as to Count IV, the *Monell* claim, is **GRANTED**.

It is further **ORDERED** that the Complaint, ECF No. 1, as to Defendants Saginaw County and Mark Garabelli is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Count I, the unlawful search and seizure claim, of Plaintiff's Complaint will proceed to trial as against Defendants Meder and Shields.

Dated: January 14, 2020                                                 s/Thomas L. Ludington
                                                                                    THOMAS L. LUDINGTON
                                                                                    United States District Judge